UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DESEON DEAN, | Case No. 16-12249 |
| Plaintiffs, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| ALLSTATE INSURANCE COMPANY, | U.S. MAGISTRATE JUDGE |
| Defendant. | ELIZABETH A. STAFFORD |

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [12] AND DENYING DEFENDANT'S REQUEST FOR SANCTIONS**

After being hit by a car on the night of September 5, 2015, Plaintiff DeSeon Dean filed a claim for No-Fault Personal Injury Protection ("PIP") Benefits with the Michigan Assigned Claims Plan ("MACP"). The MACP assigned Plaintiff's claim to Defendant Allstate Insurance Company on December 29, 2015. After reviewing Plaintiff's application, supporting documentation, and medical records, Allstate requested that Plaintiff undergo an Examination Under Oath ("EUO"). Plaintiff's counsel denied the EUO.

On May 31, 2016, Plaintiff filed this action in Wayne County Circuit Court, alleging breach of contract and seeking declaratory relief. Plaintiff claims that he incurred expenses for care, recovery, and/or rehabilitation; necessary replacement

services; and other personal protection benefits, and that Defendant unreasonably refused to pay these benefits.

Defendant timely removed the case to this Court on June 17, 2016 [Dkt. 1]. Defendant then filed its Motion for Summary Judgment [12] on February 21, 2017. Defendant requested that the Court either dismiss the entirety of Plaintiff's case or dismiss the claims pertaining to the fees charged by Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center, where Plaintiff treated after the accident. A hearing on the motion took place on July 12, 2017.

The Court will **GRANT IN PART and DENY IN PART** Defendant's Motion for Summary Judgment. Given the myriad serious issues with Plaintiff's case – including the fact that he treated with a doctor whose license was revoked due to the deceitful practice of medicine – no reasonable trier of fact could return a verdict in Plaintiff's favor, at least as it pertains to the approximately $90,000 in fees charged by Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center. Therefore, to the extent Defendant seeks dismissal of those claims, the motion for summary judgment is **GRANTED**, and those claim against Defendant are dismissed. However, Defendant's Motion is **DENIED** to the extent that it seeks dismissal of Plaintiff's claims for household services, attendant care, and wage loss.

The Court will also **DENY** Defendant's request for sanctions. This request is based on a screenshot of Plaintiff's PIP benefits application that appears in Plaintiff's response brief. The screenshot shows a modified version of Plaintiff's application, as compared to the version of the application submitted as an exhibit to both parties' briefs. It is clear that Plaintiff's counsel's error was unintentional and not done in bad faith. *See Danese v. City of Roseville*, 757 F.Supp. 827, 829 n.2 (E.D. Mich. 1991) (sanctions are inappropriate where the misrepresentations "may very well have resulted from mistake or inadvertence," and movants did not prove "that the alleged misrepresentations were intentional.").

## FACTUAL BACKGROUND

### I. Plaintiff's Injuries

On September 5, 2015, at approximately 9 PM, a Chevrolet Suburban struck Plaintiff while he was standing on a sidewalk at the intersection of Collingwood and Dexter in Detroit. Plaintiff was taken to Henry Ford Hospital, where he reported pain in his left arm, left leg, left hip, knees, and left elbow. (Pl.'s Ex. B). He also exhibited bruises, and an abrasion over the left lower anterior abdomen. *Id.* A physical examination revealed that Plaintiff was oriented to person, place, and time. Plaintiff had mild degenerative disc disease, but otherwise suffered no significant spinal or neuroforaminal stenosis. *Id.* The doctor further noted that "structures in the pelvis appear intact. Hip joints are normal." *Id.* No fractures were

evident. *Id.* CT scans of Plaintiff's head and cervical spine were negative and revealed no major problems.

## II. Plaintiff's Application for PIP Benefits

Because Plaintiff did not have a policy of insurance at the time of the accident, he submitted his application for PIP Benefits to the Michigan Assigned Claims Plan ("MACP")[1] in October 2015. According to the application, Dr. Mohamed Saleh treated Plaintiff.[2] (Def.'s Ex. D). Plaintiff also indicated that he was not taking any medications prior to this incident and that he was not treated in a hospital. *Id.* Curiously, Plaintiff also stated that he received outpatient hospital treatment. *Id.* Plaintiff also claimed that he did not have any kind of health insurance. *Id.*

In October and December of 2015, the MACP informed Plaintiff that it could not process his claim without a completed PIP application and automobile insurance information from the owner of the vehicle involved in the accident. (Def.'s Ex. E, G). On December 17, 2015, Plaintiff's counsel informed MACP that Plaintiff could not reach the owner of the vehicle involved in the accident. MACP

---

[1] At the hearing, Defense counsel referred to the Michigan Assigned Claims Plan as "the plan of last resort." *See* M.C.L. § 500.3172(1).

[2] In response to question 24 of the application, which asks whether the claimant was treated by a doctor for injuries from the accident, and if so, the doctor's address, Plaintiff seemed to indicate that Dr. Saleh worked at Oakland Physical Therapy and at Orthopedic P.C. *See* Def.'s Ex. D.

assigned Plaintiff's PIP Benefits claim to Allstate on December 29, 2015. (Def.'s Ex. I).

Under the MACP, "[a] servicing insurer . . . shall investigate the claim for benefits under the Plan." (Def.'s Ex. J at 4). According to the Plan, the servicing insurer may require the claimant to submit additional documentation or submit "to an examination under oath." *Id.* Defendant asked Plaintiff to undergo an Examination Under Oath ("EOU") in May 2016. Plaintiff's counsel denied the EOU request and told Allstate that it could depose her client after he filed his lawsuit.[3] (Def.'s Ex. K).

### III. Plaintiff's Medical Records from Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center

Medical records from Orthopedic P.C. indicate that Plaintiff treated with Doctors Muhammed Awaisi and Chitra Sinha various times between September 16, 2015 and March 2, 2016. (Def.'s Ex. O). Dr. Awaisi is originally from Massachusetts. His Massachusetts medical license was revoked in September 2008.[4] (Def.'s Ex. L). Dr. Awaisi's petition for reinstatement of his license was

---

[3] Defense counsel informed the Court at the hearing that Plaintiff's deposition was the equivalent of an EOU. After Defendant obtained Plaintiff's sworn statement at the deposition, it rejected his claim.

[4] The Massachusetts Board of Registration in Medicine alleged that Dr. Awaisi 1) engaged in conduct that undermined the public confidence in the integrity of the medical profession; 2) practiced medicine deceitfully, or engaged in conduct which has the capacity to deceive or defraud; and 3) failed to furnish the Board, its investigators or representatives documents, information or testimony to which the Board is entitled.

denied by the Massachusetts Board of Registration in Medicine in August 2013. *Id.* In 2009, the Michigan Board of Medicine suspended Dr. Awaisi's license for a period of six months. (Def.'s Ex. M). Upon reinstatement, Dr. Awaisi's license was limited from May 2010 through June 2011. *Id.*

Dr. Chirta Sinha specializes in Obstetrics and Gynecology. (Def.'s Ex. N). Her address of record is listed as Edison, New Jersey. *Id.*

According to the medical records, Plaintiff treated at the Greater Lakes Ambulatory Surgical Center and received multiple P-Stim devices[5] from several different doctors. (Def.'s Ex. O). On September 16, 2015, Surgeon Mohammad Saleh inserted the P-Stim device. On October 21, 2015 and November 23, 2015, Dr. Muhammed Awaisi inserted the P-Stim device. Finally, on December 29, 2015 and January 28, 2016, Dr. Chirta Sinha inserted the P-Stim device. *Id.*

Plaintiff's Patient Account Summary with Orthopedic P.C. (as of November 15, 2016) provides a list of the dates on which Plaintiff treated and total charges accrued. Orthopedic P.C. charged $6,418.00 per visit on the same dates Plaintiff received a P-Stim device. *Id.* Plaintiff's Patient Account Summary with Greater Lakes (as of December 14, 2016) indicates that Greater Lakes charged $15,855.00 per visit. (Def.'s Ex. P).

---

[5] The P-Stim device is an acupuncture-type device that is applied to the outer ear and delivers small electrical pulses. It is used for pain management.

## IV. Plaintiff's Deposition Testimony

Plaintiff began treating at Oakland Physical Therapy approximately two weeks after his accident, after he saw a flyer on the wall at "a little mini mall." (Def.'s Ex. Q at 57:6-14). He admitted that he initiated contact with Oakland Physical Therapy and that "no doctor prescribe[d] [him] with therapy." *Id.* at 57:21-24. Plaintiff "went to physical therapy before [he] started going to the doctor," but eventually, a doctor did prescribe physical therapy. *Id.* at 58:11-18. Oakland Physical Therapy referred him to a pain doctor at Orthopedic P.C. *Id.* at 60:6-9.

Plaintiff treated at Orthopedic P.C. until March 2016. *Id.* at 56:6-9. The records from Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center notwithstanding, Plaintiff claims that he never saw a male doctor while he treated at Orthopedic P.C. *Id.* at 68:8-10. According to Plaintiff, he saw two female doctors at Orthopedic P.C., "a white lady and . . . a short lady" who "looked mixed." *Id.* at 61:13-15. Plaintiff testified that no one told him that "the mixed lady" – presumably, Dr. Sinha – was an OB/GYN from New Jersey; it was his understanding that "she was a pain doctor and she was supposed to be helping me out with my pain, that's it." *Id.* at 62:8-13. Plaintiff remembered the white female doctor spoke with him about his pain and was the first person who "told me I need

to get an MRI." *Id.* at 62:22-25. He believed the white lady "probably dr[e]w blood" and gave him pain medication. *Id.* at 63:2-11.

Again, contrary to the medical records, Plaintiff said that the P-Stim device was only applied once. *Id.* at 64:8-9, 65:18-20. The procedure took place in the patient room where "you had to sit . . . to wait to see the doctor." *Id.* at 64:21-23. No one advised him of any costs or fees as to the device or the procedure. *Id.* at 65:9-15, 67:17-23.

Plaintiff began treating with Southfield Pain Management in or around June 2016, after being referred there by an individual named Katrina at Oakland Physical Therapy. *Id.* at 53:13-19, 56:14-20. It was at Southfield Pain Management that Plaintiff first saw a male doctor, Dr. William Gonte. *Id.* at 106:13-16. Doctors at Southfield Pain Management prescribed him Norco, ibuprofen, and Naproxen. *Id.* at 53:9-17. Plaintiff said that he saw Dr. Gonte "once a month just so I can get my script for my physical therapy." *Id.* at 54:1-2. Dr. Gonte also gave Plaintiff injections and MRIs. *Id.* at 54:3-13.

When asked about the presence of Mohammed Saleh's name on his PIP application form, Plaintiff said, "No, I didn't say nothing about no Mohammed." *Id.* at 115:7-9. He opined that Mohammed "probably was someone [the white female doctor] had in there with her . . . they'd be writing down on some paper while I be talking to her, but they never did nothing to me." *Id.* at 115:7-18.

Defense counsel asked Plaintiff whether he had assistance in completing the benefits application form. Plaintiff apparently obtained the form from Oakland Physical Therapy. He said that "[a]nything I had to fill out, I filled it out at home or I filled out at the doctor's office or I filled it out at Oakland Physical Therapy." *Id.* at 116:22-25. He also stated that Oakland Physical Therapy "just told me which part to fill out and all that." *Id.* at 117:13-14.

## LEGAL STANDARD

On a Rule 56 motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

It is also critical to recognize that Plaintiff cannot defeat summary judgment "by factual assertions in [his] brief . . . since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues." *Garvey v. Montgomery*, 128 Fed. Appx. 453, 462 n.6 (6th Cir. 2005).

## ANALYSIS

The Michigan No-Fault Act was designed to provide "assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." *Adanalic v. Harco Nat'l Ins. Co.*, 309 Mich. App. 173, 187 (2015). The Michigan Automobile Insurance Placement Facility ("MAIPF"), which maintains the MACP pursuant to M.C.L. §500.3172, "shall make an initial determination of a claimant's eligibility for [PIP] benefits . . . and shall deny an obviously ineligible claim." M.C.L. § 500.3173a(1).

M.C.L. § 500.3173a(2) is the applicable No-Fault statute that governs this case. That statute provides:

> A person who presents or causes to be presented an oral or written statement, including computer-generated information, as part of or in support of a claim to the Michigan automobile insurance placement facility for payment or another benefit knowing that the statement contains false information concerning a fact or thing material to the claim commits a fraudulent insurance act under [M.C.L. 500.4503] that is subject to the penalties imposed under [M.C.L. 500.4511]. A claim that contains or is supported by a fraudulent insurance act . . . is ineligible for payment or benefits under the assigned claims plan.

No genuine issue of material fact exists here. Plaintiff was discharged from the hospital less than 24 hours after the accident. The hospital records indicate that, apart from a few lacerations, Plaintiff was otherwise uninjured. Plaintiff's sworn deposition testimony is inconsistent with both his benefits application and the bills from Orthopedic P.C. and Greater Lakes. On the application, which Plaintiff completed in October 2015, Plaintiff represented that he treated with Dr. Mohammad Saleh, a male. During his sworn deposition testimony, however, Plaintiff adamantly denied ever treating with any male doctors at Orthopedic P.C. *See* Def.'s Ex. Q at 61:4, 13 ("I didn't see no guy when I was going to 19 Mile . . . I never seen no guy."). Plaintiff also denied multiple applications of the P-Stim device, notwithstanding the $6,418.00 charged by the medical providers each time the device was applied. *Id.* at 64:8-9, 65:18-20; *see also* Def.'s Ex. O. In addition, Dr. Awaisi, one of Plaintiff's treating doctors, previously lost his medical license for committing fraud. Dr. Sinha, who specializes in Obstetrics and Gynecology, also inexplicably provided rehabilitative care to Plaintiff. Aside from a feeble argument about how he cannot remember all of the doctors he treated with, Plaintiff has given this Court nothing to explain these issues and discrepancies.

Plaintiff "cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Aerel,*

*S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 907 (6th Cir. 2006) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999)). Plaintiff's narrative is filled with unexplained and suspicious gaps, and the Court finds that Defendant had every reason to deny Plaintiff's claims for the medical bills from Orthopedic P.C. and Greater Lakes.

## Conclusion

As discussed above, the Court finds that there is no genuine issue of material fact as to whether Plaintiff's claim for PIP benefits for coverage of the bills from Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center was clearly fraudulent. Those claims against Defendant are dismissed. Plaintiff may proceed with this case as to any claims for household services, attendant care, and wage loss.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [12] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim, as it pertains to the medical bills from Orthopedic P.C. and Greater Lakes Ambulatory Surgical Center, is dismissed. Defendant's Motion is **DENIED** to the extent that it seeks dismissal of Plaintiff's claims for household services, attendant care, and wage loss.

**IT IS FURTHER ORDERED** that Defendant's request for sanctions is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a proposed Joint Final Pretrial Order by October 24, 2017.

**IT IS FURTHER ORDERED** that the Final Pretrial Conference shall be held on October 31, 2017 at 2:30 p.m. in Room 124 of the U.S. District Courthouse in Detroit, Michigan.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: September 19, 2017 | Senior United States District Judge |